IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LENISE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07cv653-CSC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Lenise Brown ("Brown"), applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim on March 17, 2005. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Following the ALJ's adverse decision, the plaintiff retained new counsel and filed

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

another application for supplemental security income benefits. After a hearing before a different ALJ, the ALJ rendered a "fully favorable" decision finding the plaintiff disabled as of March 18, 2005, and awarding her benefits. The ALJ issued his decision from the bench.

> I announced the basis for my decision at the hearing held on June 26, 2007. I adopt here those findings of fact and reasons.
>
> To summarize briefly, I found you disabled as of March 18, 2005, because of status post cerebral vascular accident, degenerative disc disease of the lumbar spine, bi-lateral carpal tunnel syndrome (status post releases), cardiovascular disease, asthma, hypertension, depression, and anemia, which based on medical expert testimony, I found restricted you to less than a full range of sedentary work. That finding precludes performance of your past relevant work, and when coupled with your age, education, and past relevant work, gives you a vocational profile that corresponds to Medical-Vocational Rule 201.14, which directs a finding of disabled. In addition, a vocational expert testified that you are unable to perform any work existing in significant numbers in the national economy. In making my decision, I considered Social Security Rulings 83-14 and 96-6p with regard to your limitation of only occasional use of hands.

(Pl's Br., Att. # 1, doc. # 12).

Consequently, this case is not about whether the plaintiff is disabled, but rather, when she became disabled. The second ALJ concluded that the plaintiff was disabled as of March 18, 2005. The plaintiff claims an onset date of July 1, 2003.[2] Thus, the period at issue is from July 1, 2003 until March 17, 2005.[3]

The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have

---

[2] During the administrative hearing, the plaintiff amended her onset date to July 1, 2003, which corresponds to the cerebral vascular accident. (R. 248).

[3] March 17, 2005, is the date the first ALJ denied Brown's first application for benefits.

consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[4] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Plaintiff Lenise Brown ("Brown") was 48 years old at onset and 50 years old at the time of the first hearing before the ALJ. She has a General Equivalency Diploma ("GED") and three and a half years of college. (R. 21). Her prior work experience includes work as resident advisor, security job, and waitress. (R. 26). Following the hearing,

---

[5] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

the ALJ concluded that the plaintiff has severe impairments of "status post old cerebrovascular accident (or syncopal episode) in July 2003 with left-sided weakness, iron deficiency anemia, and headaches." (R. 24). The ALJ also concluded that because Brown's depression and hypertension were "well controlled with medication," these conditions were not severe impairments. (*Id*.). She concluded that although the plaintiff claimed to have a brain tumor, there was no medical evidence corroborating a brain tumor, and thus, it was not a medically determinable condition. (*Id*.). The ALJ concluded that the plaintiff has the residual functional capacity to perform light work and that she could perform her past relevant work. (R. 26). Therefore, the ALJ concluded that the plaintiff is not disabled. (*Id*.).

**B. Plaintiff's Claims.** The plaintiff presents three issues for the Court's review. As stated by the plaintiff, the issues are as follows.

1. Whether the ALJ committed reversible error by failing to find that the mass in Plaintiff's brain found by MRI was not a severe impairment.

2. Whether the ALJ committed reversible error by not properly considering the effect of all Plaintiff's non-exertional impairments on her ability to sustain gainful employment.

3. Whether the ALJ improperly used Plaintiff's daily activities to find that she could perform substantial gainful activity.

(Pl's Br. at 1, doc. # 12).

## IV. Discussion

The plaintiff raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

However, the court pretermits discussion of all the plaintiff's arguments, except her first one regarding her brain lesion, because the court concludes that the ALJ erred as a matter of law and a remand is necessary.

The plaintiff argues that the ALJ erred when she failed to find the mass in her brain was a severe impairment. As a result, the ALJ did not pursue the sequential evaluation beyond step 2 of the analysis, and she did not consider the effects of this brain lesion on the plaintiff's ability to work. The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel,* 800 F.2d at 1031. Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval Social Security Ruling 85-28 at 37a.)

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(c). The plaintiff has the "burden of showing her impairment is "severe" within the meaning of the Act." *McDaniel,* 800 F.2d at 1030 - 31 ("Unless a claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits.")

The ALJ determined that there was no medical evidence to corroborate the plaintiff's allegation of a brain tumor. (R. 24). Thereafter, the ALJ concluded that although

> [t]he claimant testified that she had headaches due to a brain tumor. . . the medical evidence does not reveal a diagnosis or treatment by any physician for a brain tumor.

(R. 25).

The problem with the ALJ's determination, however, is that she failed to consider the medical evidence that the plaintiff has a brain lesion as well as severe stenosis of the internal cranial carotid artery. On July 27, 2003, the plaintiff presented to the Baptist Hospital Emergency Room complaining of weakness and numbness on her left side. (R. 131-185). Her husband reported Brown had slurred speech and confusion. (R. 134). The CT scan indicated that the plaintiff "has a focal low density lesion involving the medial right parietal lobe . . . measuring a centimeter in size." (R. 172). A July 28, 2003, MRI revealed "an abnormal mass lesion in the extraaxial location of the right cerebral hemisphere." (R. 133).

> MR BRAIN WITH AND WITHOUT CONTRAST
>
> Correlation was made with noncontrast CT scan of the brain.
>
> The ventricles are midline and normal in size. The sulci, fissures and cisterns are within normal limits. Identified in the medial parietal lobe, the patient has a 1cm mass lesion, I believe is extraaxial in location. This lesion is hyperintense on T1 and hyperintense on T2, FLAIR and diffusion weighted imaging. There appears to be enhancement on the periphery with some chemical shift artifact. Since the CT scan image does not demonstrate any definite hemorrhage this may represent a cystic neoplasm with some chronic blood degradation products or possibly a melanoma metastatic lesion is quite atypical for other typical lesions within the brain. Also identified some faint hyperintensities involving the right basal ganglia and caudate as well as the anterior limb of the internal capsule on the right. This area is hyperintense on both T1 and T2, but not clearly identifiable on the corresponding CT scan. No definite enhancement was evident, but the single appearance is quite atypical again could represent localized hemorrhage or melanin from a melanoma metastatic lesion.

IMPRESSION:

1. ABNORMAL MASS LESION IN THE EXTRAAXIAL LOCATION IN THE RIGHT CEREBRAL HEMISPHERE. QUESTION WHETHER THIS MAY REPRESENT SOME UNUSUAL CHRONIC HEMORRHAGE VS. CYSTIC HEMORRHAGIC METASTATIC LESION OR POSSIBLY MELANOMA. A METASTATIC LESION IS OF ABNORMAL SIGNAL INTENSITY. SOME ABNORMAL AREAS OF SIGNAL INTENSITY IN THE BASAL GANGLIA. QUESTION WHETHER THIS MAY REPRESENT SOME UNUSUAL HEMORRHAGE IN THE RIGHT.

(R. 174-75).

A carotid cerebral arteriography revealed "rather severe stenosis of the supraclinoid internal carotid artery and very little flow is observed through this segment into the left middle and anterior cerebral arteries and branches." (R. 182). Brown was discharged from the hospital with diagnoses of cerebrovascular accident (stroke) and "cerebrovascular disease with stenotic supraglenoid left internal carotid artery." (R. 132).

The ALJ has a duty to develop a full and fair record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).[6] When there is a conflict, inconsistency or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why she accepted or rejected one opinion or record over another. "In the absence of such a statement, it is impossible for a reviewing court to

---

[6] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

determine whether the ultimate decision on the merits is rational and supported by substantial evidence."*Cowart,* 662 F.2d at 735 (11th Cir. 1981).  "Failure to do so requires the case be vacated and remanded for the proper consideration."  *Hudson v. Heckler,* 755 F.2d 781, 785 (11th Cir. 1985).  As will be explained below, the court concludes that the ALJ failed to fully and fairly develop the record concerning the plaintiff's brain lesion and intracranial disease.

> A stroke, or cerebrovascular accident (CVA), is a gross cerebral hemorrhage or softening of the brain following hemorrhage, thrombosis or embolism (blood clot obstruction) of the cerebral arteries.  Stroke is a term for any sudden-onset focal neurologic deficit. Symptoms may include coma, paralysis (particularly one side of the body), convulsions, aphasia and other neurologic signs determined by the location of the lesion.
>
> The physiologic picture in stroke is complicated by the injury to the brain tissue caused by the traumatic episode, and by the fact that stroke hardly ever occurs as the only illness in a healthy person.
>
> Rehabilitation following a stroke must take into account the severity of the initial event, the area of the brain affected, the resultant pathophysiology, and the deficits encountered. There are significant differences in the cognitive abilities in persons with left-sided hemiplegia (right hemispheric damage) and right-sided hemiplegia (left hemispheric damage).
>
> Persons with left-sided hemiplegia may experience visuomotor perceptual impairment, loss of visual memory, and left-sided neglect. These deficits may not be readily apparent, because the person still may be verbally fluent. Impulsiveness, disorganization in performance of activities of daily living, and lack of insight are critical elements in safety. Lack of insight and inability to follow through are significant blocks to learning (Gatens and Hebert, 1996).
>
> Persons with right-sided hemiplegia have difficulty with effective communication; vocabulary and auditory retention are reduced. However, the functions of visuomotor perception and memory should be intact, and may be utilized in teaching and learning (Gatens and Hebert, 1996).

ROSCOE N. GRAY, M.D., ATTORNEYS' TEXTBOOK OF MEDICINE, ¶ 102.30 (3rd ed. 2004)

In addition, "[w]hen the left side of the brain is affected, the patient will have right hemiplegia (paralysis of one side of the body) and impairment of verbal abilities. CVA on the right side results in left hemiplegia, perceptual deficits affecting such skills as driving, and possibly also inappropriate affect." *Id.* at ¶ 182.50.

In this case, the medical evidence is undisputed that Brown has an "abnormal mass lesion" on the right cerebral hemisphere of her brain. (R. 174-75). In addition, she has "rather severe stenosis of the supraclinoid internal carotid artery." (R. 182). As a result of the stenosis, Brown has significantly decreased blood flow "into the left middle and anterior cerebral arteries and branches." (*Id.*)

Brown testified that she suffers from migraine headaches as a result of the stroke. (R. 247, 252, 266).

> Q: You told us that you had headaches?
> A: Severe. Yes, ma'am.
> Q: How many do you have in a week's time?
> A: Sometimes, sometimes I have them at everyday and sometimes I don't have them for, you know, about several days in a row being it'll skip.
> Q: Uh-huh.
> A: Uh-huh.
> Q: So they don't have a, a regular pattern.
> A: No, ma'am. That's why they was running [INAUDIBLE], kept running those tests.
> Q: How long do you have a headache? When you have one, how long does it last?
> A: It last, man, it last all day just about. You have to lay down with it. Uh-huh.
> Q: I was going to ask if there is anything that you can do to relieve –
> A: Uh-huh.
> Q: The pain?
> A: You have to lay down in quietness. Everything hurts you. If someone come in and tap an ink pen, that'll hurt. You have to be in the quiet.

   *  *  *
  Q: Okay. And you do you deal with your severe headaches?
  A: I have to lay down. I had to [INAUDIBLE], be in the quiet.

(R. 252-53, 266).

Despite the medical evidence that she suffers from an "abnormal mass lesion in the extraaxial location in the right cerebral hemisphere," (R. 174-75), and "rather severe stenosis of the supraclinoid internal carotid artery,"[7] (R. 182), the ALJ failed to consider these conditions, presumably because she concluded that Brown does not suffer from a "brain tumor." (R. 24). According to the ALJ, "[t]he claimant testified that she had headaches due to a brain tumor. However, the medical evidence does not reveal a diagnosis or treatment by any physician for a brain tumor." (R. 25).

While the medical evidence does not demonstrate that Brown has a brain tumor, the evidence is clear that she has a brain lesion.[8] Moreover, Brown also suffers from significant bilateral intracranial disease which results in very little blood flow to that area of her brain. (R. 182). It is reasonable to conclude that these conditions could cause her to suffer from severe migraine headaches as alleged. Inexplicably, however, the ALJ did not consider these conditions nor their effects on Brown's ability to work. Because the ALJ failed to even recognize that Brown suffers from a brain lesion and severe intracranial stenosis, she did not

---

[7] Dr. Bryan of the Alabama Neurological Clinic described Brown's condition as "[c]erebrovascular disease with subcortical right cerebral infraction and significant bilateral intracranial disease." (R. 189-90).

[8] The court notes that the doctor who read the MR image upon which the lesion was discovered specifically noted that the lesion could possibly be "cystic hemorrhagic metastistic lesion or possibly melanoma." (R. 174-75). Although not a physician, the court is confident that if the lesion is melanoma, it would then qualify as a brain tumor.

consider whether these conditions constituted severe impairments.[9] Consequently, the ALJ also did not consider what effects these impairments would have on Brown's ability to work.[10]

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). An ALJ may not arbitrarily pick and choose facts from the medical evidence to support his conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839, 840-841 (11th Cir. 1992). In this case, the ALJ does not explain why she failed to consider the medical evidence that suggests that Brown suffers from an abnormal brain lesion, significant bilateral intracranial disease and migraine headaches. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Cowart,* 662 F.2d at 735. "Failure to do so requires the case be vacated and remanded for the proper consideration." *Hudson,* 755 F.2d at 785.

---

[9] Although the ALJ concluded that Brown's headaches constituted a "severe" impairment, (R. 24), thereafter she did not consider how Brown's headaches affected her ability to work. For example, the vocational expert testified that considering Brown's testimony during the administrative hearing,

> a number of problems would preclude her from working. One that jumps right at me is the need to lie down frequently. . . . She's indicated that migraine headaches cause her to have to, several days in a row to all week, have to lie down and stay in a dark room. All those things together would, certainly, keep a person from any public work.

(R. 270).

[10] *See supra* Fn. 9.

Finally, in light of the ALJ's failure to fully and fairly consider the evidence in the record regarding the plaintiff's cerebral impairments, the court must also conclude that the ALJ erred as a matter of law when she failed to properly evaluate all of the plaintiff's severe and non-severe impairments, singly and in combination, to determine whether Brown is disabled. As a result of her failure to properly consider the plaintiff's impairments, doubt is necessarily cast upon the ALJ's determination that the plaintiff can return to her past relevant work. Thus, the ALJ's determination about Brown's residual functional capacity to perform work cannot be supported by substantial evidence.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is due to be REVERSED and this case REMANDED to the Commissioner for further proceedings.

A separate order will be entered.

Done this 12th day of February, 2008.

                    /s/Charles S. Coody
                  CHARLES S. COODY
                  CHIEF UNITED STATES MAGISTRATE JUDGE